1
2
3
4
5
6

ALLACCESS LAW GROUP
Irene Karbelashvili, State Bar Number 232223
irene@allaccesslawgroup.com
Irakli Karbelashvili, State Bar Number 302971
irakli@allaccesslawgroup.com
1400 Coleman Ave , Ste F28
Santa Clara, CA 95050
San Jose, CA 95113
Telephone:      (408) 295-0137
Facsimile:      (408) 295-0142

7

Attorneys for ZACH KARNAZES, Plaintiff

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN FRANCISCO DIVISON

12

13

14

ZACH KARNAZES,

15

Plaintiff,

16

17

THE CITY AND COUNTY OF SAN
FRANCISCO; SAN FRANCISCO
MUNICIPAL TRANSPORTATION
AGENCY; and DOES 1-10, inclusive,

18

19

20

Defendants.

21

22

23

24

25

26

27

28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 20-cv-02954

*Civil Rights*

**COMPLAINT FOR INJUNCTIVE
RELIEF & DAMAGES: FOR
DISABILITY DISCRIMINATION IN
VIOLATION OF TITLE II OF THE
ADA; THE REHABILITATION ACT
O F 1973 & CALIFORNIA'S CIVIL
RIGHTS STATUTES**

**DEMAND FOR JURY TRIAL**

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1    Plaintiff ZACH KARNAZES complains of Defendants THE CITY AND COUNTY OF

2  SAN FRANCISCO; SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY and

3  DOES 1-10, inclusive, and alleges as follows:

4

5                                    **PARTIES**

6  1.      Plaintiff ZACH KARNAZES ("Plaintiff") is, and at all times relevant herein was, a

7  qualified individual with a physical "disability" as defined by Department of Justice regulation

8  28 C.F.R. § 36.104 and under California Government Code § 12926. Plaintiff is a resident of San

9  Francisco and typically rides the MUNI buses around 1-2 times per week when his health

10  permits. Plaintiff first experienced permanent physical disabilities in May of 2008 from his hands

11  and arms. Plaintiff had to have multiple surgeries for this. Later in that year Plaintiff began

12  having difficulty walking and had to begin using a cane by 2009. By 2011-2012 Plaintiff could

13  no longer walk even a few city blocks with a cane, and the pain and frustration of trying to get

14  disability seating on buses was a severely challenging issue by this point.  Many passengers

15  would not give up their seat to Plaintiff because Plaintiff was in his 20's with a cane and they

16  accused Plaintiff of "faking it."  Sometimes, seniors would outright yell in Plaintiff's face and

17  swear at him for sitting in the disabled seating on the buses.  Around this time, the 14 bus

18  reduced its service to multiple stops which greatly affected Plaintiff.  The removal of the

19  Valencia 26 line in late 2009 was also a huge loss for Plaintiff and made traveling with

20  disabilities even harder as buses along Mission street (14 and 49 bus lines) became increasingly

21  packed and unaccommodating to his disabilities.

22  2.      Due to his hand and arm disabilities Plaintiff could not use a manual wheelchair going

23  out and had to get a motorized wheelchair which he still uses today. Plaintiff began using a

24  motorized wheelchair to board buses in 2012 and still does so up to this day.  Plaintiff is no

25  longer able to walk even a single city block with a cane and must have a wheelchair to travel

26  outside the home at all times. Consequently, Plaintiff requires assistance boarding Defendants'

27  buses as a disabled passenger.

28  3.      Plaintiff is informed and believes and based thereon alleges that Defendant CITY AND

Page 2 of 24

COUNTY OF SAN FRANCISCO ("CCSF") is a consolidated city-county and is both a municipal corporation and a county within the State of California.

4.      Plaintiff is informed and believes and based thereon alleges that Defendant SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY ("SFMTA") is a department of the CCSF within its executive branch. SFMTA is responsible for the management of all ground transportation in San Francisco, including oversight of the Municipal Railway ("MUNI") public transit, bicycling, paratransit, parking, traffic, walking, and taxis.

5.      THE CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY and DOES 1-10, inclusive, (collectively, "Defendants") were responsible in whole or in part for the condition of the buses and the actions and inactions of the bus operators and is subject to Title II of the Americans with Disabilities Act of 1990, to the requirements of the Rehabilitation Act of 1973, to the requirements of California State law requiring full and equal access to public facilities pursuant to Government Code Section 11135, and to all other legal requirements referred to in this Complaint.

6.      Defendants DOES 1-10, inclusive, are now, and/or at all times mentioned in this Complaint were, licensed to do business and/or actually doing business in the State of California. Plaintiff does not know the true names or capacities, whether individual, partner, or corporate, of DOES 1-10, inclusive, and for that reason, DOES 1-10, inclusive, are sued under such fictitious names. Plaintiff will seek leave of court to amend this Complaint to allege such names and capacities as soon as they are ascertained.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 for violations of the ADA, 42 U.S.C. 12101 *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Pursuant to supplemental jurisdiction, attendant and related causes of action, arising from the same facts, are also brought under California law, including but not limited to violations of the Unruh Act, Cal. Civ. Code § 51 *et seq.* and the Disabled Persons Act,  Cal. Civ. Code § 54 *et seq.*

8.      Venue is proper in this Court pursuant to 28 USC 1391(b) and is founded on (1)

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff's information and belief that some or all of the defendants reside in this judicial

district; and (2) "a substantial part of the events or omissions giving rise to the claim occurred"

in this judicial district.

### INTRADISTRICT ASSIGNMENT

9.     This case should be assigned to the San Francisco/Oakland intradistrict since Plaintiff's

causes of action arose in the County of San Francisco.

### GOVERNMENT CLAIMS FILED

10.    On or about October 7, 2019 Plaintiff timely filed a Tort Claim with CCSF arising out of

the May 22, 2019 incident. CCSF rejected this claim on October 31, 2019.  On November 26,

2019 Plaintiff timely filed a claim with CCSF arising out of the July 24, 2019 incident. CCSF

rejected this claim on February 25, 2019. On March 12, 2019 Plaintiff filed a claim with the

CCSF arising out of the October 29, 2019; November 3, 2019; November 6, 2019; and January

8, 2020 incidents. At the time of filing of this complaint, CCSF has not yet taken any action on

this claim.

### FACTUAL ALLEGATIONS

11.    Plaintiff alleges that Defendants have discriminated and continue to discriminate against

him on account of his disability based on the following: (1) SFMTA bus drivers have refused to

board Plaintiff simply because he is in a wheelchair (while often letting able-bodied passengers

board and disembark); (2) SFMTA bus drivers have told Plaintiff to "catch the next one!"

claiming that the bus is too full, without following proper SFMTA MUNI Code published

protocol which includes asking other people to move form disabled seating to make it available

to Plaintiff; (3) SFMTA bus drivers have failed to ensure that Plaintiff be allowed to board the

bus before non-disabled passengers; (4) SFMTA bus drivers have demanded that Plaintiff

provide them with his destination before letting him board; (5) SFMTA drivers have mocked,

yelled at, and expressed open hostility towards Plaintiff due to his disability needs, sometimes

belittling Plaintiff's need to board in a wheelchair; (6) SFMTA drivers have relied on passengers

and repeated requests from Plaintiff to lift bus seats to make disability seating available instead

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

of following proper protocols; (7) SFMTA drivers have failed to keep the bus safe and intervene when other passengers have expressed open hostility and swearing at Plaintiff for needing to board in his wheelchair; (8) SFMTA drivers have failed to make physical accommodations to allow Plaintiff to board in his wheelchair, with actions including but not limited to: (a) not pulling the bus close enough to the curb for a ramp to be safely deployed onto the sidewalk and (b) closing bus doors instead of deploying a wheelchair ramp upon request; (9) SFMTA bus drivers have made inaudible requests to passengers to make disability seating available for Plaintiff, without employing the use of the bus PA system or rising from their seat; (10) SFMTA bus drivers have stopped short of pulling into the bus zone in a passive-aggressive tactic to try to not get Plaintiff to board the bus; (11) Defendants have failed to implement an adequate grievance process that would help provide for a prompt and equitable resolution of Plaintiff's complaints; and (12) Defendants have retaliated against Plaintiff for his efforts to resolve the above issues of discrimination.

12.     On February 23, 2018 Plaintiff was waiting at the intersection of Market St and Van Ness Ave for a bus. When the bus arrived at around 6:00 p.m. A third of the bus was visibly empty, especially in the front. Upon approaching Plaintiff, the bus driver pointed his thumb behind him and said, "catch the next one," suggesting that he might not pick up Plaintiff. The bus driver did not pull all the way to the end of the bus zone where Plaintiff was waiting to board. The bus driver told Plaintiff that the bus was too full. Plaintiff told the bus driver that Plaintiff could tell that there is room. It was only after Plaintiff articulated his right to board and demanded to get on that the bus driver begrudgingly put the ramp down and Plaintiff was able to board. When disembarking at 18th and Mission, Plaintiff asked the bus driver if in the future the bus driver could stop and give Plaintiff the option to board. The bus driver told Plaintiff that wheelchair users always want to get on the bus when it is full.[1] Plaintiff replied to the bus driver that the bus was obviously not too full, as evidenced by Plaintiff being able to get on and off the bus. Plaintiff also asked the bus driver if next time the bus driver could park in a way that would make it easier for Plaintiff to board. The did not acknowledge or respond to Plaintiff's concerns and instead

---

[1] The surveillance video footage of this portion of the incident was deleted by Defendants.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1    responded with: "I don't like to talk too much."

2    13.    On May 31, 2018, around 5:25 p.m. there was a wheelchair user waiting to board the

3    outbound 14 bus at 24th and Missions Street. Plaintiff moved his wheelchair behind another

4    wheelchair user waiting to board the same bus. When the bus pulled up, the bus driver did not let

5    the other wheelchair user or Plaintiff board the bus and drove away. Plaintiff had to wait for 3

6    more buses before he could finally get home.

7    14.    On July 2, 2018 Plaintiff stopped his wheelchair in front of the 14 bus going outbound at

8    the bus shelter at 24th and Mission. The bus stopped. The bus driver pulled forward and looked

9    like he was going to drive away so Plaintiff hurried as fast as he could in his wheelchair asking

10   pedestrians to move so he could get to the end of the boarding area where the driver stopped

11   again. The bus driver put the ramp down and started yelling at Plaintiff about how Plaintiff

12   needed to wait in a different part of the loading area for his safety. The bus driver continued to

13   berate Plaintiff like child saying: "You pull up here, don't pull up there!" as if somehow it was

14   Plaintiff's fault that the bus driver stopped the bus in the middle of the bus loading area. The bus

15   driver continued to emphasize "safety" and told Plaintiff that there were nine other buses behind

16   him, insinuating Plaintiff should not have even tried to board this particular bus. When Plaintiff

17   told the bus operator, "I wasn't trying to be unsafe, I was just on the platform like anybody else"

18   the bus driver replied, "two minutes isn't gonna [*sic*] hurt you."  Again, implying that Plaintiff

19   should not have even tried to get on this bus. Plaintiff told the driver that he was making a

20   recording and that, "I don't appreciate your attitude or the way you're treating me."  This made

21   the driver much more aggressive, and he began rallying passengers against Plaintiff while

22   continuing to raise his voice. One passenger approached Plaintiff and started to argue with

23   Plaintiff.  After driving a little bit, the driver stopped the bus, exited his seat, and went down the

24   aisle to collect witness reports for proof of his "good behavior." The driver seemed very upset

25   that Plaintiff was recording, and that Plaintiff would file a complaint.

26   15.    The fact that the driver went out of his way to rally passengers against Plaintiff was both

27   inappropriate and potentially dangerous. Passengers are already usually upset when a wheelchair

28   boards because of the extra time it takes and because they have to move out of the seat

Page 6 of 24

1   sometimes. Pitting passengers against the disabled is potentially dangerous behavior for a driver

2   to be doing. It is not unheard of for vigilantes to physically harm people with disabilities.

3   16.     This bus driver's behavior shows inappropriate conduct and discriminatory behavior

4   towards Plaintiff for being in a wheelchair. As Plaintiff said multiple times in the video footage,

5   Plaintiff was simply trying to board the bus just like anybody else and to be treated just like

6   anybody else. Plaintiff feels that wheelchair users should not have to sit there and be

7   reprimanded and yelled at like children because they want to board the bus. Tellingly, in

8   Plaintiff's experience drivers do not say these kinds of things to able-bodied passengers. This

9   kind of intimidation, belittlement, and harassment happens more often than it should.

10  17.     The attitude of Defendants towards wheelchair users is often negative.  For example,

11  while Plaintiff was riding bus 6633 (49 inbound) on January 17th, 2020 around 12:45pm the bus

12  driver stopped to speak to another SFMTA employee who said, "I had like two wheelchairs, you

13  know, stupid stuff!"

14  18.     On July 3, 2018 at approximately 9:45 p.m. at Mission St. and 18th St. Plaintiff attempted

15  to board the 14 bus to head home. The bus driver, however, would not let Plaintiff board the bus

16  and instead directed Plaintiff to take the next bus saying, "Hey buddy, you're gonna [*sic*] have to

17  catch the one behind me..."  There were accessible seats available on the bus and the bus driver

18  failed to follow MUNI's own protocol which requires, among other things, asking passengers to

19  yield seats in the securement area for wheelchair users and to ask passengers to yield the forward

20  seats to persons with disabilities.

21  19.     On April 7, 2019 around 4:55 pm Plaintiff attempted to board the 14R bus going

22  outbound at 24th and Mission Street. The driver saw Plaintiff and begrudgingly put down the

23  wheelchair ramp in the street. As Plaintiff was on the sidewalk, he could not drive off the ramp-

24  less curb to board. Plaintiff asked the driver if he could back up and put the ramp down on the

25  sidewalk. The bus driver began raising his voice, saying something about the buses not being

26  able to go in reverse. Plaintiff asked the bus driver if he could pull forward a little instead, and let

27  the ramp down for Plaintiff to board. Despite there being plenty of space for the bus, the bus

28  driver said a truck was in the bus stop section blocking the bus from pulling forward.  Shortly

thereafter, the truck pulled away, leaving the bus driver ample space to pull up and let the ramp down. Plaintiff moved his mobility scooter towards an open area to board. Instead of letting Plaintiff board, without a word, the driver closed the doors and drove away.

20.     On May 22, 2019 Plaintiff was waiting for a bus to be not too full or not have other wheelchair passengers occupying all of the accessible seats so that he could return home after his appointment. Plaintiff was in a lot of pain and needed to get back into bed to rest and take his medication. Multiple buses passed him while waiting for an outbound bus towards Daly City. In an effort to get home, Plaintiff traveled multiple blocks in his wheelchair to a different intersection where Mission and Van Ness intersect, hoping he would be able to board a 49 bus since he was not able to board the 14 outbound to Daly City due to the aforementioned accessibility issues.

21.     When a 49 bus, number 6714 arrived, the driver failed to pull all the way up to the curb. Consequently, Plaintiff had to go into the street in his wheelchair in order to try and board the bus. The driver then told Plaintiff that the bus was too full and that there were seniors occupying the accessible seating area. There were, however, no wheelchairs or other physically disabled passengers that Plaintiff could see that were occupying the accessible seats. Plaintiff pointed out that the passengers sitting in the accessible seats did not look to be seniors (over the age of 65) nor were they using wheelchairs or other mobility devices. The entire right side of the bus looked like it was unoccupied by seniors. One of the passengers that was occupying the accessible seats stepped off the bus to yell at Plaintiff for holding up the bus. The bus driver did nothing about this.

22.     While talking to the driver, another passenger came up to the front of the bus and said to Plaintiff: "You stupid motherfucker, get the fuck out of here." The driver did nothing about this either and continued to blame Plaintiff for wanting to board. The driver then took the bus out of commission and said, "I'm calling."  Plaintiff asked the driver who he was calling but the bus driver refused to answer that question. While waiting for the driver to let him on the bus, another bus approached which Plaintiff could have taken home.  This second bus was unable to pick up Plaintiff because the 49 bus (6714) was blocking the bus stop/passenger loading area while

Page 8 of 24

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

continuing to deny boarding access to Plaintiff. The driver did not wave or communicate with the approaching bus in any way, so it did not stop, and Plaintiff could not get on that bus, either. Plaintiff pointed this out to the driver and the bus driver blamed Plaintiff, clapping his hands in a mocking gesture and said, "kudos to you!"  Eventually, the driver of the 49 (6714) bus closed its doors and drove away, without letting Plaintiff board.

23.     On July 24, 2019, at approximately 8:20 p.m. Plaintiff was waiting for a 14 or 49 MUNI bus to pick him up so he could go home. Plaintiff was waiting in the designated wheelchair boarding area at the intersection of 16th and Mission Street in San Francisco. Plaintiff saw bus 7280 (14 Outbound to Daly City) bus approach and he positioned his motorized wheelchair to try to board, however the bus driver did not pull all the way into the wheelchair boarding area. Instead, the driver stopped short, requiring Plaintiff to move his motorized wheelchair as quickly as he could to try to engage the driver to board. The driver immediately opened his doors, even though Plaintiff was struggling to get to them before other passengers. As soon as the driver opened the doors for boarding, other passengers began to board ahead of Plaintiff, while Plaintiff rushed over as fast as he could in his motorized wheelchair and asked, "can you let the wheelchair on? Hi, can you let the wheelchair on please?" The driver did not assist Plaintiff in in his request to board first. Plaintiff notified the driver, "the wheelchair is supposed to go on first." The driver responded, "I know, but I got elderly people, I got disabled people, and it's really crowded." Followed by, "y'know [*sic*] what? Call 311 because there should be another bus in front of me." The driver then said, "sorry," closed the doors, and drove away.

24.     On October 29, 2019, Plaintiff was waiting for a 14 or 49 bus to pick him up so he could go home. Plaintiff was waiting in the designated wheelchair boarding area at the intersection of 16th and Mission Street in San Francisco. At around 5:30 p.m. Plaintiff saw bus 6650 (49 outbound) approach and Plaintiff positioned his motorized wheelchair to try to board. The driver stopped the bus, the bus driver, however, would not deploy the ramp. Instead, the bus driver asked Plaintiff where Plaintiff was headed. The Plaintiff told the bus driver that he was headed to "Highland." The driver stepped out of his seat and onto the undeployed ramp.  Plaintiff asked, "can I just get on first?" since he was seeing other passengers boarding and was worried he

Page 9 of 24

1   might not have room to board soon. The driver responded: "well, which stop are you getting off

2   at?" Plaintiff told the driver again that he was getting off at "Highland." The driver gave Plaintiff

3   a disapproving look and continued to stand on the undeployed ramp. "Can I please get on first

4   before the bus gets too full?" Plaintiff asked. "I am getting off at Highland avenue" the Plaintiff

5   said once again, this time raising his voice. The driver continued to stand on the undeployed

6   ramp until eventually saying, "Highland!" and finally allowed Plaintiff to board.

7   25.    On November 3, 2019 Plaintiff was waiting for a 14 or 49 bus to pick him up so that he

8   could go home. Plaintiff was waiting in the designated wheelchair boarding area at the

9   intersection of Highland and Mission Avenue in San Francisco. Plaintiff saw bus 7249 (14

10  inbound) bus approach at around 5:40 pm and moved his motorized wheelchair to try board. The

11  bus driver stopped the bus but did not pull all the way up to the curb and would not immediately

12  put down the ramp. Plaintiff saw the bus display mention something about asking the driver for

13  the destination. Plaintiff also saw other passengers board. The following conversation transpired:

14        bus driver: "Going out of service."

15        Plaintiff: "Where"

16        bus driver: "26th Street"

17        Plaintiff: "...Yeah, I'd like to get on."

18        bus driver: (in an annoyed tone) "There is one right behind me."

19        Plaintiff: "I know, but I'd like a chance to get on, too."

20        Plaintiff: (after boarding) "It's getting cold out there, you know."

21        "Would you be able to lift the seat for me?"

22        [A customer lifts the seat up]

23  26.    At the end of the bus ride, Plaintiff tried to engage with the driver just to ask him if he

24  could pick up the Plaintiff next time, hoping that the bus driver understood the issue and Plaintiff

25  would therefore not need to file a complaint.

26        Plaintiff: "I would appreciate if you would just ask me if I want to get on the bus,

27        instead of just closing the doors"

28        driver: "All right, have a nice night sir--there was a bus behind me"

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1         Plaintiff: "I'm just saying there's always a bus behind you--"

2         driver: "I have to go sir I'm on a timed schedule, I ain't [*sic*] got no time to talk!"

3   27.     The driver continued to interrupt and raised his voice over Plaintiff as Plaintiff tried to

4 talk to the bus driver while disembarking. After Plaintiff exited the bus, the bus driver muttered

5 something about Plaintiff "trying to be a smart ass."

6   28.     On November 6, 2019 Plaintiff was waiting for the 14 or 49 bus to pick him up to go

7 home. Plaintiff was waiting in the designated wheelchair boarding area at the intersection of Van

8 Ness and McCallister street in San Francisco. At around 5:20 pm Plaintiff saw bus 6729 (49

9 outbound) approach and Plaintiff moved his motorized wheelchair to try to board. The bus driver

10 stopped the bus; however, he did not put down the ramp. When Plaintiff moved his wheelchair

11 up to the bus, the following conversation took place:

12         bus driver: "There's another 49"

13         Plaintiff: "Can you ask if people would be willing to make space"

14         driver: "There's another 49 bus behind me, about two blocks or three blocks

15         away..."

16   29.     The driver then said something about "Let me call it in for you, okay?" closed his doors,

17 and drove away.

18   30.     On January 8, 2020, Plaintiff was waiting for a 14 or 49 bus to pick him up so he could

19 go home. Plaintiff was waiting in the designated wheelchair boarding area at the intersection of

20 Mission and 9th Street in San Francisco. At around 10:00 pm Plaintiff saw bus 5739 (14

21 outbound) approach and Plaintiff moved his motorized wheelchair to try to board. The driver

22 stopped the bus, however the bus driver did not pull all the way to the curb or put down the

23 ramp. When Plaintiff moved his wheelchair up to the bus the following conversation occurred:

24         [the bus doors open to let out able-bodied passengers]

25         Plaintiff: "Hi, I would like to get on the bus, please."

26         [Multiple passengers begin exiting and boarding the bus]

27         bus driver: "You're in the wheelchair, catch the next bus "

28         Plaintiff: "could you please put down the ramp and ask people to move?"

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1        bus driver: [interrupting] "I don't have enough room here."

2        Plaintiff: "you didn't even pull to the curb all the way..."

3        bus driver: "another bus be on its way, sorry about that."

4        The driver then closed the bus doors and drove off.

5    31.    Based on the facts plead above, Defendants failed and refuse to implement and enforce

6 policies and procedures as required by the ADA including but not limited to 49 C.F.R., Part 37,

7 Subpart G §37.173.

8    32.    Defendants provide a grievance process purportedly meant to resolve accessibility

9 problems that disabled passengers such as Plaintiff may have while utilizing Defendants' buses.

10 This grievance process, however, has failed to provide for the prompt and equitable resolution of

11 Plaintiff's complaints.

12   33.    Plaintiff first began to utilize the grievance process in 2018. The grievance process

13 focuses solely on driver discipline, rather than solving accessibility issues with MUNI buses.

14   34.    Defendants do not publish in any easy to access location: (1) the rules for their grievance

15 process; or (2) the data retention policy of public bus video footage which may capture an

16 alleged ADA violation.  Plaintiff had to engage in lengthy and difficult public records requests

17 over months of correspondence with Defendants to obtain this privately kept information.[2]

18   35.    Many SFMTA buses have no posted notices for the availability of a Title II grievance

19 procedure.

20   36.    The arduous grievance process can sometimes take months to get a hearing scheduled. By

21 way of example, Plaintiff is required to call a general complaint hotline for the City and County

22 of San Francisco or type up a complaint via a general online Feedback complaint form, which is

23 not easy to access.  The online form is difficult for Plaintiff to fill out due to his disabilities and

24 Plaintiff has experienced ongoing difficulties with the hotline.

25   37.    The operators at the general complaint hotline appear to have no specific training

26 pertaining to disability access with MUNI buses.  On multiple occasions when Plaintiff called to

27

28 <hr>

[2] Some of the public records have been published on Plaintiff's website: https://zkarnazes.wixsite.com/access/muni-for-all

register a grievance, hotline operators failed to inform Plaintiff that he had the right to an ADA hearing.  Furthermore, if the call drops (which has happened to Plaintiff while riding the bus), Plaintiff has to restart this process all over again, often times with a different operator and is refused access to the operator that handled the original call.

38.     This makes the grievance process all that more complicated.  Accordingly, the only way that Plaintiff can be sure to successfully begin the grievance process is through the cumbersome online complaint form.  Plaintiff had to dig around the SF311.org website and ask for help before eventually finding that ADA grievance processes are not listed, but there is instead an option to "open a new request" to give "Muni Feedback." The form only let Plaintiff select the option for "discourteous driver" instead of an alleged ADA/Title II violation.  The form also defaulted to "No" for letting SFMTA contact Plaintiff.

39.     The online form generates a reply thanking plaintiff for his "SFMTA/MUNI Feedback" which originally misled Plaintiff about his right to a process and that a grievance hearing would be scheduled.

40.      At the completion of filing via the online form, Plaintiff is given a tracking number.  The tracking number provided is not the actual case number for the grievance; it is passed on to another department.  The complaint is subsequently given a new case number and sent to "SFMTA Customer Service," who appears to have little or no training pertaining to disability access with MUNI buses and reasonable disability accommodations. Defendants have neglected to follow-up with the reference number, requiring Plaintiff to call or email again to engage in a grievance process.

41.     Defendants have failed to adequately provide a grievance process by exhibiting the following, but not limited to: (1) failing to respond or follow up with Plaintiff's grievance request(s) for weeks or months (2) ignoring, denying, or delaying responses to reasonable disability accommodations; (3) frequently renaming email subjects and rotating grievance responses among staff to cause unnecessary confusion for Plaintiff; (4) mishandled ADA accessibility questions and the grievance process generally; and (5) responding with "Social Media Coordinator" staff and "SFMTA Customer Service" staff instead of responding through

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

the assigned ADA coordinator to answer disability-related questions and concerns posed by Plaintiff.

42.     On multiple occasions Defendants have outright refused Plaintiff to access the ADA hearing process and has referred to the process as a "courtesy"[3], instead of a legally required process under Title II.  At the first hearing, Plaintiff was not able to access the 3rd floor bathroom stall and close the door.  Plaintiff had to make a video of this access issue and file a separate complaint to be able to access the bathroom during future hearings.  On another occasion in a notice dated July 20th, 2018, Defendants provided Plaintiff with the incorrect room and floor number for the grievance hearing.  Plaintiff waited in the 6th floor lobby for some time before learning faulty information was provided.  This also caused the hearing to be delayed as a disabled witness supporting Plaintiff struggled to find the correct hearing room.

43.     Defendants meanwhile, have strict language in their hearing notification that states, "If you fail to appear at the hearing or are more than 15 minutes late, the hearing request will be closed, and we will not reschedule the hearing." and "if you fail to attend your hearing, your request for a hearing will be dropped"  without any notice about the right to attend remotely via telephone if needed as a disability accommodation.  The hearing notice also requires that Plaintiff "provide at least five days' notice for other ADA needs, such as sign language interpreters or Braille documents."

44.     The ADA grievance hearing is presided over by a hearing officer who is employed by SFMTA and who, to no surprise, has a clear bias. Such bias is exhibited, but is not limited to: (1) efforts to confuse Plaintiff rather than attempting to objectively assess the facts of the grievance; (2) efforts to coach a bus drivers response or outright speak for the bus driver; (3) efforts to interrupt and intimidate Plaintiff; (4) efforts to prevent the grievance filed by Plaintiff to be read in full; (5) efforts to deny viewing of Plaintiff's video evidence; and (6) efforts to prevent any recording of the hearing for any reason. Defendants maintain that these grievance hearings are private and do not need to be recorded for the public record.

---

[3] In an email dated Wed, Nov 13, 2019, Defendants responded to Plaintiff: "As a courtesy, we will honor your request for a Neutral Accessibility Hearing."

45.     There is also no remedy at the end of the lengthy grievance process. There is also no appeals process.  If an outcome is in Plaintiff's favor, a 1-2 page finding is given which may or may not result in disciplining the SFMTA bus driver. This finding includes no mention of any change in driver training, any change in policies and procedures, or any new efforts on Defendants' part to improve compliance with Title II.  One such finding was not signed or dated until Plaintiff submitted a specific written request for this.

46.     Lastly, Defendants have failed to retain public bus video surveillance records for some of the alleged incidents included above. In at least one case, Defendants have deleted part of a video with incriminating evidence. As Plaintiff has engaged with the Defendants' inadequate grievance process, this public video footage has been deleted at an increasing rate. Defendants now maintain that public video footage can be deleted within 72 hours of the alleged incident. After multiple alleged ADA violations, Plaintiff requested public footage from Defendants within ten calendar days, only to be told of the 72-hour policy afterwards, and that the footage Plaintiff requested had already been deleted.  In order to retain public records, Plaintiff has had to individually file a public records request each time. This makes the grievance process all the more difficult for Plaintiff.

47.     Of the video records that are provided to Plaintiff, all are in a proprietary non-standard video format on a Data CD that requires special computer software for playback. Defendants have failed upon repeated requests to provide these public video records in a widely accessible format such as .MP4, .MOV., .MPEG, AVI., or to make them playable on a standard DVD player.

48.     Of the video records that are recovered and sent to Plaintiff after the filing of a public service request, many will not play on Plaintiff's computers. Plaintiff has attempted with at least three different computers and disc drives, making phone recording of these attempts and sending them to Defendants as proof of his efforts. Plaintiff further sought assistance from a friend who works in IT to bring a laptop over to play the proprietary software from Defendants but was still unsuccessful in securing playback of the proprietary software. At least one video record was sent without the playback software included.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

49.     The above obstacles are among many that make the grievance process all the more difficult for Plaintiff to engage in.

50.     Plaintiff has spent over one hundred hours engaging in Defendants' grievance process over more than 2 years with no actual beneficial results. Plaintiff has also expended considerable time and energy over the years to request public records from Defendants, which have revealed that hundreds of accessibility related complaints are filed each year pertaining to the MUNI buses.[4]

51.     Plaintiff attended public meetings such as the SFMTA Multimodal Accessibility Advisory Committee, TRACS, Voices for Public Transit, and others, leaving public comment on the above access issues and alleged violations.  Plaintiff has also addressed the SFMTA Executive Board and notified the Mayor's Office on Disability numerous times about alleged access issues. Plaintiff has expended considerable time, energy, and effort to notify Defendants through these meeting bodies of most, if not all, of the allegations being brought in this lawsuit.

52.     Furthermore, Plaintiff has gone to additional lengths to publish and illustrate an article in the local newspaper[5], publish public records, as well as provide cell phone recordings[6] of his bus rides as extended evidence and notification to Defendants of these alleged accessibility problems.  Plaintiff has exhausted every means he can conceive of, save a lawsuit, in an effort to gain access to SFMTA services that are granted to able-bodied persons. Because Defendants have failed to address Plaintiff's concerns, provide an adequate grievance process, or remedy the other issues brought forth here, Plaintiff at this stage has no other choice but to seek relief in Court.

53.     Based on the foregoing, Defendants have failed to adopt a grievance procedure in

---

[4] By way of example, the following are public records just from 2019 pertaining to the accessibility complaints:
https://www.docdroid.net/aHevZRZ/cy-2019-passenger-service-reports-ada-yes-pdf

https://www.docdroid.net/RgdGoBM/cytd-11062019-final-120619-redacted-pdf

https://www.docdroid.net/2YX2vHu/all-2019-files-redacted-final-5-redacted-pdf
(These records were uploaded by Plaintiff)

[5] See: https://www.streetsheet.org/5309/
[6] See: https://youtu.be/M4ftUuXjFjE?list=PLEelAqZVuqxxT3RW6NMn2ligavLmye6vo

accordance with 49 C.F.R., Part 37, Subpart A §37.17.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION FOR DISCRIMINATION IN VIOLATION OF THE

### AMERICANS WITH DISABILITIES ACT OF 1990

**(Against all Defendants and each of them)**

54.     Plaintiff incorporates and re-alleges Paragraphs 1 through 53 of this Complaint.

55.     Effective January 26, 1992, Plaintiff is entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990 ("ADA").Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC Section 12131, section 201 of the ADA.

56.     Pursuant to 42 USC Section 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. Plaintiff was at all times relevant herein a qualified individual with a disability as described in this Complaint.

57.     Defendants failed in their responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described above, including failing to ensure that the public buses are accessible to disabled persons including Plaintiff. As a proximate result of the actions and omissions of Defendants have knowingly and intentionally discriminated against Plaintiff in violation of Title II of the ADA, and of the regulations adopted to implement the ADA.

58.     Plaintiff alleges that Defendants are violating basic equal access requirements under the ADA and by failing to implement policies and procedures that would prevent discrimination against physically disabled passengers, including Plaintiff. These policies include but are not limited to providing adequate quarterly training to Defendants' agents and/or employees, including drivers, concerning legal access requirements and explain to their agents/employees consequences for failing to comply with these legal obligations.

59.     As a result of the aforementioned acts and omissions by Defendants, Plaintiff left feeling like a second-class citizen; was denied the full and equal enjoyment of Defendants' services; and suffered difficulties, physical pain, missed appointments, discomfort, and embarrassment. Plaintiff will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

60.     Plaintiff seeks damages pursuant to Title II of the ADA with regard to his denial of access as alleged above. Plaintiff is informed and believes and thereupon alleges that Defendants had actual and constructive notice prior to the incidents alleged above that the buses were not accessible to disabled persons including Plaintiff. Despite being on notice Defendants failed to correct the access problems as described above. As such, Plaintiff seeks additional damages pursuant to Title II of the ADA.

        WHEREFORE, Plaintiff requests relief as set forth below.

**SECOND CAUSE OF ACTION FOR DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

**(Against all Defendants and each of them)**

61.     Plaintiff incorporates and re-alleges Paragraphs 1 through 60 of this Complaint.

62.     Defendants are a governmental agency existing under the law of the State of California with responsibility, *inter alia*, for public transportation. Plaintiff is informed and believes and therefore alleges that Defendants receive Federal financial assistance and that part of that financial assistance is used to fund the operations, construction and/or maintenance of the specific public facilities described herein.

63.     By the actions or inactions of Defendants, Plaintiff was denied and is continued to be denied full and equal access to the services described herein.

64.     Defendants' failure to provide Plaintiff with full and equal access to the same programs, activities, services, and environment as non-disabled persons, and by otherwise discriminating against Plaintiff constitutes discrimination under the ADA and related state civil rights statutes and is therefore a violation of section 504.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

WHEREFORE, Plaintiff requests relief as set forth below.

**THIRD CAUSE OF ACTION FOR DISCRIMINATION IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, ET SEQ. (CALIFORNIA DISABLED PERSONS ACT)**

65.     Plaintiff incorporates and re-alleges Paragraphs 1 through 64 of this Complaint.

66.     Through the acts and omissions described herein above, Defendants are violating California Civil Code § 54.

67.      Under California Civil Code § 54 (c), a violation of the ADA also constitutes a violation of California Civil Code Section 54 *et seq.*

68.     Plaintiff is a person with disabilities within the meaning of the California Civil Code § 54(b)(1) and California Government Code § 12926(k) and Defendants provide services to the public within the meaning of the California Civil Code § 54(a)(1).

69.     By failing to provide accommodations and services to physically disabled patrons, as set forth at length elsewhere in this Complaint, Defendants have violated, and continue to violate California Civil Code § 54, by denying customers full and equal access to Defendants' programs, services and activities; and by intentionally prohibiting Plaintiff from utilizing Defendants' services on a full and equal bases with able-bodied passengers solely because Plaintiff is disabled.

70.     As a direct and proximate result of the aforementioned acts and omissions, Plaintiff has suffered, and continues to suffer difficulty, discomfort, and embarrassment, due to Defendants' failure to address accommodations required by Plaintiff.

WHEREFORE, Plaintiff requests relief as set forth below.

**FOURTH CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**(Against all Defendants and each of them)**

71.     Plaintiff incorporates and re-alleges Paragraphs 1 through 70 of this Complaint.

72.     Section 51(b) of the California Civil Code, "The Unruh Civil Rights Act," states the following:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

73.     The transportation services provided by Defendants to the general public in California is a business establishment within the jurisdiction of the State of California, and as such are obligated to comply with the provisions of the California Unruh Civil Rights Act, California Civil Code §§ 51 et seq.

74.     Section 52 of the California Civil Code provides that whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 is liable for each and every offense.

75.     Through the acts and omissions described herein, Defendants have violated California Civil Code § 51., *et seq.*

76.     Pursuant to California Civil Code § 51(f), a violation of the ADA also constitutes a violation of California Civil Code § 51, *et seq.*

77.     Defendant's discriminatory conduct alleged herein includes, *inter alia*, the violation of the rights of persons with disabilities set forth in Title II of the ADA and therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

78.     Plaintiff alleges that Defendants conduct was intentional and therefore also an independent violation of the Unruh Act.

79.     As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer difficulty, discomfort, and embarrassment due to Defendants' failure to address modifications in policies, practices and procedures required by Plaintiff.

80.     Due to the continuous nature of Defendants' discriminatory conduct, which is ongoing,

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

injunctive relief is an appropriate remedy. Moreover, as a result of Defendants' acts and

omissions, Plaintiff is suffering irreparable harm, and thus immediate relief is appropriate.

Plaintiff is also entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff requests relief as set forth below.


**FIFTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA GOVERNMENT CODE § 11135 FOR**

**DISCRIMINATION UNDER PROGRAM RECEIVING FINANCIAL ASSISTANCE**

**FROM THE STATE OF CALIFORNIA**

**(Against all Defendants and each of them)**

81.     Plaintiff incorporates and re-alleges Paragraphs 1 through 80 of this Complaint.

82.     Plaintiff is informed and believes and thereupon alleges that the administration,

supervision and maintenance of the services offered by Defendants is and was funded in whole

or in part by the State of California.

83.     Defendants have failed to make their programs, services, and activities readily accessible

to and useable by disabled persons in violation of California Government Code § 11135 et seq.

84.     At all times herein mentioned, California Government Code § 11135 provided as follows:

> (a) No person in the State of California shall, on the basis of race, national
> origin, ethnic group identification, religion, age, sex, sexual
> orientation, color, genetic information, or disability, be unlawfully
> denied full and equal access to the benefits of, or be unlawfully
> subjected to discrimination under, any program or activity that is
> conducted, operated, or administered by the state or by any state
> agency, is funded directly by the state, or receives any financial
> assistance from the state.

> (b) With respect to discrimination on the basis of disability, programs and
> activities subject to subdivision (a) shall meet the protections and
> prohibitions contained in Section 202 of the federal Americans with
> Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules
> and regulations adopted in implementation thereof, except that if the
> laws of this state prescribe stronger protections and prohibitions, the
> programs and activities subject to subdivision (a) shall be subject to
> the stronger protections and prohibitions.

85.     Plaintiff has no adequate remedy at law, and unless the requested relief is granted,

Page 21 of 24

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff and other disabled persons will suffer irreparable harm in that they will continue to be discriminated against and be denied the benefits of the "programs, services, and activities" offered to the general public. Further, Plaintiff suffered damages, as specified, as the result of the denial of his civil rights on the date(s) alleged above and on continues basis since. Because Plaintiff seeks improvement of access for physically disabled persons, which will benefit a significant portion of the public, Plaintiff seeks attorneys' fees, litigation expenses and costs pursuant to California Code of Civil Procedure Section 1021.5, as to this claim for relief and as to all claims for relief in this Complaint in which Plaintiff seeks injunctive relief.

WHEREFORE, Plaintiff requests relief as set forth below.

## SIXTH CAUSE OF ACTION

### RETALIATION AND COERCION IN VIOLATION OF THE ADA 42 USC § 12203

### (Against all Defendants and each of them)

86.     Plaintiff incorporates the allegations contained in paragraph 1 through 85 of this complaint for this claim.

87.     At all times relevant to this complaint, the 42 U.S.C.§ 12203, provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.
> [And]
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

88.     Based on the aforementioned allegations, Defendants, through their agents, have retaliated against Plaintiff.

89.     Defendants' conduct is discriminatory, outrageous and tortuous in violation of 42 U.S.C. § 12203.

90.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary

damages as a result of Defendants' retaliatory practices unless and until the Court grants relief.

WHEREFORE, Plaintiff requests relief as set forth below.

## *PRAYER*

Plaintiff prays as follows:

1.     That this Court issue a preliminary and permanent injunction directing Defendants THE CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY; and DOES 1-10, inclusive, and each of them, to  comply with all requirements of Title II of the ADA and Section 504, and the implementing regulations at 28 C.F.R. Part 35 and 49 C.F.R. Parts 37 and 38, including but not limited to providing mandatory periodic training to Defendants' agents and/or employees, including drivers, concerning legal access requirements and explain to their agents/employees consequences for failing to comply with these legal obligations; implementing a compliant grievance process including, but not limited to, making the process accessible to Plaintiff, maintaining a recording of the hearing, and a committing to issuing a prompt decision after the hearing. Note: Plaintiff is not invoking § 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all;

2.     That this Court award to Plaintiff all appropriate damages, including but not limited to statutory damages, general damages, special damages, and treble damages, in amounts within the jurisdiction of this Court, all according to proof;

3.     That this Court award to Plaintiff all reasonable statutory attorneys' fees, litigation expenses, and costs of this proceeding as provided by law;

4.     That this Court award prejudgment interest pursuant to California Civil Code Section 3291; and

5.     For such other, further relief as this Court may deem proper.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Dated: April 30, 2020          */s/  Irakli Karbelashvili*
                                           Irakli Karbelashvili, Attorney for Plaintiff
                                           ZACH KARNAZES

### *DEMAND FOR JURY*

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated: April 30, 2020          */s/  Irakli Karbelashvili*
                                           Irakli Karbelashvili, Attorney for Plaintiff
                                         ZACH KARNAZES

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES